IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES LEON FRANCISCO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:11-CV-367 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff James Leon Francisco ("Francisco") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for both supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, ("Act"), 42 U.S.C. §§ 1614(a)(3)(A); 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and argument of counsel and the applicable law, and conclude that substantial evidence supports the ALJ's decision. As such, I **RECOMMEND DENYING** Francisco's motion for summary judgment (Dkt. # 14), and **GRANTING** the Commissioner's motion for summary judgment (Dkt. # 16).

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Francisco failed to demonstrate that he was disabled under the Act. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Francisco bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education and work experience. See 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Francisco was born on December 17, 1966 (Administrative Record, hereinafter "R." 153) and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c)(2011). Francisco attended school through the 11th grade, and obtained his GED. (R. 25.) Francisco's past relevant work includes working as a tree climber (heavy, semiskilled), landscaping (medium, semiskilled), retail sales clerk (medium, semiskilled), and maintenance worker (heavy, semiskilled). (R. 43.) The ALJ found that Francisco had not engaged in substantial gainful activity during the period of alleged disability. (R. 11.) Francisco reported that during the relevant period he had the ability to manage his personal care, prepare simple meals, and perform laundry duties. (R. 33).

3

Case 7:11-cv-00367-SGW-RSB   Document 20   Filed 12/26/12   Page 3 of 14   Pageid#: 908

## Claim History

Francisco protectively filed for SSI and DIB, claiming that his disability began on January 12, 2001, due to musculoskeletal problems in his neck and back, and an aneurism. (R. 185.) The state agency denied his application at the initial and reconsideration levels of administrative review. (R. 54, 64.) On March 25, 2010, ALJ Joseph T. Scruton held a hearing to consider Francisco's disability claim. (R. 13.) Francisco was represented by counsel at the hearing, which included testimony from Francisco and his wife, Mary A. Firebaugh, and vocational expert AnnMarie E. Cash. (R. 13.)

At the hearing, Francisco conceded through his counsel that he is not entitled to DIB benefits, and argued that the relevant time period for Francisco's SSI claim is January 1, 2009. On May 12, 2010, the ALJ entered his decision denying Francisco's claims for DIB and SSI. (R. 13.) The ALJ found that Francisco suffered from the following severe impairments: post right hand fracture, aneurysm surgery on cerebral and carotid arteries, degenerative disc disease of lumbar spine, degenerative joint disease of right shoulder, thoracic sprain, cervical sprain and generalized osteoarthritis. Considering these impairments, the ALJ found that Francisco retained the RFC to perform sedentary work, except that he is limited to sitting for no more than 90 minutes at a time, up to a total of six hours in an eight hour day, and standing/walking for no more than 30 minutes at a time, up to a total of four hours in an eight hour day. Francisco is unable to climb ladders, ropes, or scaffolds, and only occasionally reach overhead with the right upper extremity. He is unable to perform jobs that involve operating a motor vehicle, exposure to bright lights, unprotected heights or moving mechanical parts. Francisco's concentration is

impaired by the sedating effects of medication, and thus, he is limited to tasks that require only short, simple instructions. (R. 12.)

The ALJ determined that Francisco has no past relevant work. However, given the evidence obtained from the Vocational Expert at the administrative hearing, the ALJ found that Francisco can perform work, such as interviewer, order clerk, and receptionist, all of which exist in significant numbers in the national economy. (R. 17.) On June 17, 2011, the Appeals Council denied Francisco's request for review, and this appeal followed. (R. 1-4.)

## **Medical Evidence[1]**

William Humphries, M.D., a consultative examiner for the social security administration, examined Francisco on December 18, 2008. (R. 485-88.) Francisco's chief complaints of disabling conditions were that he suffers from a slipped disc in his neck, and low back pain brought on by frequent bending and lifting. (R. 485.) On exam, Dr. Humphries found that Francisco had a slightly reduced range of motion and tenderness to palpation in his neck, and slightly reduced range of motion and tenderness to palpation in his lumbar spine. (R. 486.) He also had slightly reduced range of motion in both shoulders, both hips and right ankle. Dr. Humphries noted that Francisco was able to get on and off the examining table without difficulty, had normal strength in both lower extremities, and was alert and fully oriented. (R. 487-88.)

Dr. Humphries diagnosed Francisco with post-traumatic degenerative joint disease in his right shoulder and AC joint, chronic strain of the cervical, thoracic, and lumbar spine, and mild degenerative joint disease of the right ankle, both hands and feet. (R. 488.) Dr. Humphries recommended that Francisco be limited to sitting for six hours in an eight hour workday,

---

[1] The court is not referencing medical evidence prior to December 18, 2008, because it is not at issue in this appeal.

standing and walking six hours in an eight hour day, lifting 50 pounds occasionally, and 25 pounds frequently, occasional climbing, kneeling and overhead work, and no crawling. (R. 488.)

On January 28, 2009, Francisco presented to the emergency room complaining of a headache persisting for six days. A CT scan of the head was "worrisome" for a right internal carotid artery aneurysm. (R. 500, 509.)

On February 2, 2009, Francisco was examined by John A. Feldenzer, M.D., for evaluation of an intracranial aneurysm. (R. 650-51.) Francisco reported that he was in a motor vehicle accident in 2007, and suffered from intermittent headaches ever since. A February 3, 2009 CT angiography and MRI confirmed a suspected right cavernous carotid artery aneurysm. (R. 501.) Dr. Feldenzer referred Francisco to William Tingler II, M.D., for evaluation of his headaches. (R. 651.) Dr. Feldenzer noted that Francisco was self-employed in his own landscaping business and did a significant amount of tree cutting work. (R.650.) On February 5, 2009, Dr. Feldenzer again examined Francisco and noted that he did not see a structural cause for Francisco's headaches, and believed that they are unrelated to his aneurysm. (R. 649.)

On February 6, 2009, Francisco saw Dr. Tingler for an evaluation of his headaches. Francisco related that he suffered from throbbing head pain daily, most notably when he awakens. (R. 546.) Dr. Tingler expressed concern that Francisco had been getting narcotic medication from "friends" for the past two years, and set a long term goal to take Francisco off of narcotic pain medication. (R. 546.)

On April 6, 2009, Francisco saw Dr. Tingler, who again discussed a long term goal of getting Francisco off chronic narcotic analgesics for his headache.

6

On April 16, 2009, Francisco underwent surgery at UVA Health System for embolization of the right carotid artery aneurysm. (R. 738-43.) Francisco was discharged the following day and told to avoid strenuous activity or heavy lifting for 14 days, but was otherwise allowed to resume normal activity. (R. 700.)

On April 29, 2009, state agency medical consultant Shirish Shahane, M.D., completed a physical residual functional capacity assessment for Francisco. He found that Francisco can lift 20 pounds occasionally, and 10 pounds frequently, stand/walk for a total of six hours in an eight hour day, and sit for a total of six hours in an eight hour day. Dr. Shahane stated that Francisco could only perform occasional climbing, kneeling, and crawling, limited overhead reaching, and must avoid hazards. (R. 653-57.)

On July 7, 2009, Francisco followed up with Dr. Tingler and complained of throbbing headaches and poor sleep. However, Francisco also reported that he was "pleased," "less stressed," and "less concerned." (R. 665.) Dr. Tingler began treating Francisco with nortriptyline as a "reasonable headache preventative" and planned to "titrate down on [Francisco's] total narcotic usage." (R. 665.)

Dr. Tingler re-examined Francisco on October 7, 2009, and noted that he was "doing better," and "continues to improve with tincture of time." (R. 663.) Francisco reported that he tolerated the nortriptyline well and "feels that it has given him great benefit." (R. 663.) Dr. Tingler stated that Francisco had not been cleared by UVA to return to work, but that it was "pending." He further noted that Francisco has been working by bidding on jobs, subcontracting the labor, and is making money. (R. 663.)

7

On February 14, 2010, Francisco returned to UVA complaining of a headache and pain in his right eye socket. He received intravenous Phenergan and Imitrex. His symptoms improved, and he was discharged within a couple of hours in stable condition. (R. 674.) Francisco reported that he has had constant headaches for the last two years, but they are controlled by Lortab. (R. 670.)

## ANALYSIS

Francisco argues that 1) the ALJ erred by failing to assign substantial credibility to his testimony that he suffers from severe, disabling headaches; 2) the hypothetical posed by the ALJ to the vocational expert was incomplete, because it relied upon Dr. Humphries's opinion which was rendered before Francisco was diagnosed with and treated for a cerebral aneurism; and 3) the case should be remanded to the Commissioner to consider whether Francisco was disabled for a closed period of time between his alleged onset date of January 1, 2009, and post-aneurysm surgery in February 2010.

### Credibility

Francisco argues that the ALJ erred by failing to assign substantial credibility to his testimony that he suffers from severe, disabling headaches. Francisco's disability claim hinges on his subjective testimony that his headaches prevent him from engaging in substantial gainful activity. The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). A review of the record as a whole shows that substantial evidence supports the ALJ's decision to find Francisco partially credible.

8

At the administrative hearing, Francisco testified that he is unable to tolerate bright lights, and cannot concentrate due to pain. He stated that his pain medication makes him sleepy, and he has about three or four bad days a week when he doesn't feel like getting up due to pain. (R. 30-31.) Francisco's wife, Mary Firebaugh, testified that Francisco is in "a lot of pain" from headaches, and has headaches three to four times a week, during which he lies down in the dark and is disoriented. (R. 38.) Francisco argues that this testimony establishes that he suffers from disabling pain.

Francisco's subjective allegations of disabling pain are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Francisco met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Francisco's ability to work. Id. at 594-95.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

The ALJ determined that Francisco's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Francisco's testimony concerning the limiting effects of his headaches were only partially credible. (R. 15.) The ALJ specifically noted in his decision that Francisco reported that his headaches were "better" and

9

less frequent in October 2009. The ALJ also noted the several references in the medical records to Francisco's ongoing involvement in the landscaping business. (R. 15-16.)

Substantial evidence in the record supports the ALJ's determination that Francisco's testimony regarding his disabling pain is only partially credible. Francisco's medical records do not reflect a debilitating condition, but instead generally show improvement of Francisco's headaches with treatment. Francisco's headaches were treated by Dr. Tingler, who characterized them as migraine headaches. (R. 546.) Dr. Tingler's main concern appeared to be weaning Francisco off of prescription narcotics in favor of a more "reasonable headache preventative." (R. 546, 665, 668.) By October 2009, Francisco stated that the was doing better and continued to improve. (R. 663.) He reported less stress, less frequent headaches and improved sleep. (R. 663.) He was taking a low dose of nortriptyline, which he tolerated well, and believed was of "great benefit." (R. 663.) Francisco complained again of headache pain in February 2010, and was given intravenous medication. (R. 673-74.) However, that same medical record noted that Francisco's headaches were well controlled on Lortab. (R. 670.)

Francisco's medical records do not provide an evidentiary basis to corroborate Francisco's subjective allegations that his headaches are so severe that he cannot perform unskilled, sedentary work. No physician found that Francisco's headaches prevented him from working or otherwise engaging in productive activity. The ALJ is charged with weighing all of the evidence and assessing the claimant's credibility, and a claimant's subjective allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can

10

reasonably be expected to cause the pain the claimant alleges." Hines v. Barnhart, 453 F.3d 559, 565 n.3 (citing Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996)).

The ALJ does not assert that Francisco is pain free. On the contrary, the ALJ recognizes that Francisco suffers from severe conditions that greatly limit his ability to function. The issue, however, is not whether Francisco has physical impairments or experiences symptoms, but whether those impairments and symptoms prevent him from performing the unskilled, sedentary jobs identified by the vocational expert. The ALJ accounted for the limitations posed by Francisco's headaches by eliminating jobs that would expose him to bright lights, and limiting him to jobs requiring no more than short, simple instructions due to any potentially sedating side effects of medication. (R. 12.) Given Francisco's medical records, the improvement of his headaches with treatment, and the statement in February 2010 that his headaches are controlled on Lortab, there was substantial evidence to support the ALJ's finding that Francisco's subjective complaints were not entirely credible.

## **Vocational Expert**

Francisco argues that the hypothetical posed by the ALJ to the vocational expert was incomplete, because it relied upon Dr. Humphries' opinion which was rendered before Francisco was diagnosed with and treated for a cerebral aneurism. A vocational expert must base his opinion upon a consideration of all the evidence in the record, and submit the opinion in response to proper hypothetical questions which fairly set out all of a claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989.)

The ALJ asked the vocational expert hypothetical questions based on his RFC assessment and Francisco's age, education, and vocational profile. (R. 44-46.) The vocational expert

11

testified that Francisco could perform the unskilled, sedentary jobs of interviewer, clerk and receptionist. (R. 46-47.) Contrary to Francisco's assertion, the ALJ did not simply rely upon Dr. Humphries's opinion when formulating the hypothetical question for the vocational expert. The ALJ also considered the other evidence in the record, as evidenced by the fact that his RFC assessment went beyond the limitations established by Dr. Humphries, to account for limitations related to Francisco's headaches, syncopal episodes and aneurysm. Specifically, the ALJ limited Francisco to sitting 90 minutes or less at a time, and standing/walking 30 minutes or less at a time. (R. 12.) The ALJ eliminated any jobs involving ladders, scaffolds, unprotected heights, or dangerous machinery, including motor vehicles. (R. 12.) The ALJ limited Francisco to jobs without bright lights, and jobs with short simple instructions to account for side effects of medication. (R. 12.) None of these limitations were included in Dr. Humphries's evaluation. It is clear that the ALJ considered all of the evidence in the record when formulating the hypothetical given to the vocational expert. Thus, I conclude that the hypothetical given to the vocational expert adequately reflected all impairments on record.

## Closed Period of Disability

At the hearing before this court, Francisco's counsel argued for the first time that Francisco should be granted at least a closed period of disability between January 1, 2009 and February 2010, and that the case should be remanded so that the Commissioner can focus on whether Francisco was disabled during that specific period of time.

Francisco initially filed for disability claiming an onset date of January 12, 2001. (R. 124.) At the administrative hearing, Francisco's counsel agreed that Francisco was not entitled to DIB benefits back to 2001, but argued for a disability onset date of January 1, 2009,

12

based on Francisco's diagnosis at that time of a cerebral aneurism. (R. 24.)  The ALJ considered whether Francisco was disabled between January 12, 2001 and February 2010 in his decision. (R. 9-18.)  The ALJ's opinion encompassed the closed period of alleged disability asserted by Francisco, and, as set forth in detail above, there is substantial evidence to support the ALJ's finding that Francisco was not disabled during that time.

In fact, it is during this closed time period that Francisco began visiting Dr. Tingler for his headaches, and began reporting improvement in his symptoms. (R. 663, 665.)  It was also during this time period that Dr. Shahane performed his physical functional capacity assessment and concluded that Francisco could perform a wide range of work at the light level of exertion. (R. 653.)  As stated above, the issue is not whether Francisco suffered from pain, but whether that pain was such that it precluded any substantial gainful activity.  After carefully scrutinizing the record the ALJ concluded that Francisco retained the residual functional capacity to perform certain work between during the entire time period at issue.  Given the record in this case before the ALJ, that decision is supported by substantial evidence.

## **CONCLUSION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion.  In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Francisco is totally free from any distress.  The objective medical record simply fails to document the existence of any physical conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment.  It appears that the ALJ properly considered all of the

13

objective and subjective evidence in adjudicating Francisco's claim for benefits and in determining that his physical impairments would not prevent him from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Francisco's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: December 26, 2012

*/s/ Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge